**Arland L. GERBERDING,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 71–1585.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 4, 1972.

Decided Jan. 10, 1973.

Jerry Estes, Fort Dodge, Iowa, for appellant.

Evan L. Hultman, U. S. Atty., Sioux City, Iowa, for appellee.

Before MATTHES, Chief Judge, and GIBSON and HEANEY, Circuit Judges.

MATTHES, Chief Judge.

Due to a unique history, this case is before us on two appeals, one from the denial of a § 2255 motion to vacate sentence and the other from the original judgment of conviction.

On September 10, 1954, a three count indictment was filed against Arland L. Gerberding, appellant, in the Northern District of Iowa, Central Division, charging him with three violations of the Federal Bank Robbery Act, 18 U.S. C. § 2113. His trial commenced on August 19, 1955, and the jury returned a verdict of guilty on all counts on the following day. On the same day appellant was sentenced to twenty years in prison on Count I, twenty years on Count II, and ten years on Count III, the sentences to run concurrently.

Appellant filed a timely notice of appeal and an application for leave to proceed in forma pauperis. The district court denied the application on the ground that the appeal was not taken in good faith. Subsequently, the appeal was dismissed by this court for want of prosecution and, in 1970, when appellant filed a motion with this court to reinstate his appeal, the motion was denied on the ground that "this case has been closed in this court for more than fifteen years."

In 1964, appellant initiated proceedings under 28 U.S.C. § 2255 to vacate his sentence. The district court ruled that the motion was premature since appellant was still serving a previously-imposed state sentence and had not yet entered into federal custody. Then, on January 20, 1971, having been transferred into federal custody, appellant renewed his § 2255 motion in the district court and a partial transcript of the

trial proceedings was ordered at government expense.

The court, without a hearing, vacated the sentences on Counts I and II on the ground that appellant was sentenced on those counts "on the basis of a finding of his guilt of criminal acts not charged in the indictment." Otherwise, the court found appellant's contentions to be without merit. Thus the sentence for ten years on Count III remained in effect.

Appellant appealed the denial of his motion to vacate sentence to this court, the appeal being submitted to a panel of three judges on April 12, 1972. On April 24, that panel vacated the submission of the appeal from the denial of the motion to vacate sentence and held that appellant should be permitted to take a delayed appeal from his original judgment of conviction. In addition, a complete trial transcript was ordered.

The appeal from the judgment of conviction having now been perfected, we would probably be justified in ignoring appellant's contentions which he initially raised on appeal from the denial of the motion to vacate sentence and failed to renew on direct appeal. However, in an effort to bring an end to this litigation, we have chosen to review all contentions raised on both appeals. Therefore, we have considered the following grounds relied upon for reversal of the judgment and the granting of a new trial: (1) multiplicity and duplicity of the indictment; (2) conduct of the prosecution in calling a witness it knew would invoke the privilege against self-incrimination and in purposely eliciting the fact that the witness had entered a plea of guilty to the same offense; (3) admission of a sawed-off shotgun and testimony pertaining to burglary tools which were not connected with the bank robbery in question; (4) failure of the court to hold a hearing on the voluntariness of appellant's confession as required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); (5) ineffective assistance of counsel; and (6) denial of the right to a speedy trial.

## I. *Multiplicity and Duplicity of the Indictment*

Appellant's first contention is that the indictment is multiplicitous and/or duplicitous and therefore invalid. We disagree.

■ "Multiplicity" is the charging of a single offense in several counts. Wright, Federal Practice and Procedure § 142, p. 306 (1969 ed.); United States v. Brandom, 320 F.Supp. 520, 525 (W. D.Mo.1970). Count I of the indictment against appellant factually alleged violation of the second paragraph of § 2113(a), entering the Lakota Farmers Trust & Savings Bank with intent to commit larceny therein. Count II factually alleged a violation of the first paragraph of § 2113(a), taking money from persons by force and violence, and by intimidation. Count III factually alleged violation of § 2113(b), taking and carrying away bank money with intent to steal, and § 2113(d), assaulting and putting in jeopardy the lives of two persons while committing such offense.

In Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), the Supreme Court found that it was not Congress's intention, in establishing a series of lesser and greater offenses under the Bank Robbery Act, to pyramid penalties. However, although more than one sentence is prohibited, the consummated crime may well encompass several of the graduated offenses described by the statute. Thus there is no contradiction in permitting multiple counts of an indictment under § 2113, and multiple convictions, and at the same time prohibiting multiple sentencing Gorman v. United States, 456 F.2d 1258, 1259 (2d Cir. 1972); United States v. White, 440 F.2d 978, 981 (5th Cir. 1971); Hardy v. United States, 292 F.2d 192 (8th Cir. 1961).

■■ Although Count I factually alleged only a violation of the second paragraph of § 2113(a), such offense was stated to be in violation of § 2113(a), (b) and (d). As noted, Count III factually alleged violations of (b) and (d).

Appellant urges that this repetition, if nothing else, renders the indictment multiplicitous. It is sufficient in reply to note that the statement of facts in the pleading, rather than the statutory citation, is controlling, provided that the defendant is not mislead to his prejudice by any error or omission. Rule 7(c), Fed.R.Crim.P.; Tanksley v. United States, 321 F.2d 647 (8th Cir. 1963); Wright, Federal Practice and Procedure § 124, p. 228 (1969 ed.). As appellant was properly charged with violations of § 2113(b) and (d) in Count III, any improper reference to these subsections in Count I could not have been prejudicial. We note also that the jury was carefully instructed to find appellant guilty of Count I only if it found the facts alleged therein to be true.

Next appellant contends that Count III is duplicitous in that it alleged that appellant both assaulted and put in jeopardy the lives of two persons in the course of the bank robbery.

"Duplicity" is the joining in a single count of two or more distinct and separate offenses. Wright, Federal Practice and Procedure § 142, p. 306 (1969 ed.). Its vice is that a general verdict of guilty will not reveal whether the jury found the defendant guilty of one crime and not guilty of the other, or guilty of all.

It is important to distinguish, however, a statute creating several offenses from one, such as § 2113(d) which enumerates several ways of committing the same offense. Where, as is the situation here as to Count III, the statute specifies two or more ways in which one offense may be committed, all may be alleged in the conjunctive in one count of the indictment, and proof of any one of the methods will sustain a conviction. Rule 7(c), Fed.R.Crim.P.; Joyce v. United States, 147 U.S.App.D.C. 128, 454 F.2d 971, 976–977 (1971); United States v. Amick, 439 F.2d 351, 358 (7th Cir.) cert. denied, 404 U.S. 823, 92 S.Ct. 48, 30 L.Ed.2d 51 (1971); Hall v. United States, 372 F.2d 603, 610 (8th Cir.), cert. denied, 387 U.S. 923, 87 S.Ct. 2040, 18 L.Ed.2d 979 (1967); Dranow v. United States, 307 F.2d 545, 558–559 (8th Cir. 1962). Needless to point out, a verdict of guilty would bar further prosecution on all allegations.

It is abundantly clear that although § 2113 as a whole creates several offenses, § 2113(d) describes two ways in which previously-described offenses may become aggravated. Accordingly, Count III is not duplicitous.

## II.  Conduct of the Prosecution

Appellant also argues that he was deprived of a fair trial by the conduct of the prosecution in calling a witness it knew would invoke the privilege against self-incrimination and in purposely eliciting the fact that the witness had entered a plea of guilty to the same offense.

The witness, Terrance Farrell, had pleaded guilty in the District Court of Minnesota to one of the bank robbery offenses with which appellant was charged. As a government witness, he testified at some length about his activities in connection with appellant prior to the bank robbery. Finally, when asked if he had gone to the town of Lakota with appellant, Farrell refused to answer on the ground that, although he had already pleaded guilty, he had not yet been sentenced. The witness also indicated a desire to change his plea. The trial court sustained the witness' privilege. Defense counsel, however, was permitted to cross-examine the witness on all matters he testified to before claiming his privilege.

There is substantial authority that the assertion of the fifth amendment privilege by a witness under these circumstances is not reversible error. Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963); United States v. McKuin, 434 F.2d 391 (8th Cir. 1970); cert. denied, 401 U.S. 911, 91 S.Ct. 875, 27 L.Ed.2d 810 (1971); Smith v. United States, 331 F. 2d 265, 276 (8th Cir.), cert. denied, 379

U.S. 824, 85 S.Ct. 49, 13 L.Ed.2d 34 (1964).

In Namet v. United States, *supra*, the Supreme Court noted two standards used in the lower courts to determine whether a witness' claim of privilege constituted reversible error:

> "First . . . error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from the use of the testimonial privilege. . . . A second theory seems to rest upon the conclusion that, in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the· defendant. . . . And even when the objectionable inferences might have been found prejudicial, it has been held that instructions to the jury to disregard them sufficiently cured the error." 373 U.S. at 186–187, 83 S.Ct. at 1154.

The *Namet* Court found that within the basic rationale of these rules there had been no reversible error.

In the present case, the trial judge properly submitted a curative instruction to the jury. Also in this case, as in *Namet*, the witness' right to invoke the privilege was disputed, and the witness' testimony before he claimed his privilege was relevant and admissible.

This court's recent decision in United States v. King, 461 F.2d 53 (1972), relied upon by appellant, is inapposite. There the government deliberately called two witnesses knowing both would lawfully assert their privileges against self-incrimination, the evidence supporting the conviction was not strong, and no useful governmental purpose was served by calling the witnesses other than in forcing them to take the privilege in a manner obviously prejudicial to the defendant.

A rule similar to that governing a witness' assertion of his fifth amendment privilege applies to his guilty plea. A jury may be apprised of an alleged accomplice's guilty plea, either through his own testimony, the remarks of the trial judge, or by witnessing the plea in open court, provided the trial judge instructs the jury that the plea cannot form the basis of any inference as to the guilt of the defendant. United States v. Gleeson, 411 F.2d 1091, 1095 (10th Cir. 1969); Koolish v. United States, 340 F.2d 513, 529–530 (8th Cir.), cert. denied, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965). Smith v. United States, *supra*, 331 F.2d at 275. Here the trial judge failed to give the appropriate cautionary instruction. Appellant, on the other hand, neither requested the instruction, nor objected to its absence. In any event, we think, in light of the overwhelming evidence of guilt, including eyewitness identification, unexplained possession of a large sum of money on his person and in his car, and a confession, any prejudice which may have occurred did not affect substantial rights of the appellant and was harmless. Rule 52(a) Fed.R.Crim. P.

III. *Admission of Shotgun and Testimony Pertaining to Burglary Tools*

Appellant also complains of the admission into evidence of a sawed-off shotgun found in appellant's apartment and testimony concerning a variety of burglary tools found in his car, on the ground that these items were insufficiently connected with the bank robbery. The government, while conceding that the shotgun was not used in the robbery, argued that it was nevertheless properly admitted into evidence for the purpose of impeachment after appellant on cross-examination denied having ever seen the gun.

Assuming arguendo that the shotgun should not have been admitted into evidence and that the prosecutor exceeded the bounds of propriety in reference to

the weapon in argument to the jury, we hold that any error flowing therefrom was harmless, particularly because of the overwhelming evidence of guilt and the proper introduction of two hand guns allegedly used in the robbery. Rule 52(a), Fed.R.Crim.P.; Smith v. United States, 460 F.2d 1236, 1237 (8th Cir. 1972); United States v. Lewis, 140 U.S.App.D.C. 345, 435 F.2d 417, 420–421 (1970).

■ The testimony as to appellant's possession of burglary tools, on the other hand, was relevant and admissible, in view of the defense of alibi, to corroborate that part of appellant's confession describing an attempt to burglarize the bank the night before the robbery. United States v. Fisher, 455 F.2d 1101 (2d Cir. 1972).

## IV.

Appellant's last three contentions are dealt with summarily as we find them to be clearly lacking in merit.

■ Appellant, by failing to object at the trial, is not entitled to a Jackson v. Denno hearing on the voluntariness of his confession, absent special circumstances. United States v. Carter, 431 F.2d 1093 (8th Cir. 1970). Such circumstances are "a defendant's apparent abnormal mental or physical condition, obvious ignorance, of lack of awareness. . . ." The record in this case reveals no special circumstances. Although appellant was interrogated for a long period of time, he was fully advised of his rights beforehand and otherwise given considerate treatment. *Cf.* Edwards v. Swenson, 454 F.2d 1106 (8th Cir. 1972).

■ Appellant also asserts that he was denied effective assistance of counsel on the grounds that counsel failed to preserve appellant's appellate rights, failed to file pretrial motions to suppress certain evidence found in appellant's apartment and car, failed to move for dismissal of the indictment on grounds of a denial of the right to a speedy trial, and failed to subpoena alleged alibi witnesses. Suffice it to say that we have carefully examined the record and find no indication that counsel did other than exercise in each instance the judgment which might be expected of one trained in the law and committed to the diligent application of its principles. Robinson v. United States, 448 F.2d 1255 (8th Cir. 1971); United States v. Cotton, 446 F.2d 865 (8th Cir. 1971).

■ Finally, appellant cites the one year delay from the date of his indictment to his conviction, coupled with the prejudicial effect of such delay on alleged alibi witnesses, as establishing a violation of his Sixth Amendment right to a speedy trial. In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court recently developed a balancing test in which the conduct of the prosecution and the defendant are weighed in determining when a defendant has been denied a speedy trial. Justice Powell, the author of the opinion, delineated four factors to be taken into account along with any other circumstances of a particular case that are considered relevant: the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

In this case appellant at no time demanded a speedy trial. During the delay between indictment and conviction he was serving a state sentence. More importantly, the benefits to be derived from the testimony of his alleged alibi witnesses at any earlier trial date were dubious at best. On this record, we are unable to say that appellant was deprived of his right to a speedy trial.

## V.

■ Although appellant has not convinced us that this case should be remanded for another trial, we still must

consider the relief required by the doctrine of Prince v. United States, supra, which precludes imposition of separate sentences upon all three counts of the indictment. The fact that these sentences were concurrent does not cure the *Prince* defect. Holland v. United States, 384 F.2d 370, 371 (5th Cir. 1967); cf. Jones v. United States, 396 F.2d 66 (8th Cir. 1968), cert. denied, 393 U.S. 1057, 89 S.Ct. 695, 21 L.Ed.2d 697 (1969). We note, however, that when these sentences were imposed on August 20, 1955, by the thoroughly competent and conscientious trial judge, the late Henry N. Graven, *Prince* had not yet been decided by the Supreme Court.

*Prince* held that, in establishing a series of greater and lesser offenses under the bank robbery statute, Congress did not intend to pyramid the penalties therefor. It follows that the three independent sentences in this case cannot stand. However, the question of how procedurally to cure that defect has been the subject of consideration by a number of courts.

Some courts have followed a merger theory, derived, in part at least, from the merger language in *Prince*—"This mental element [intent to steal] merges into the completed crime if the robbery is consummated." 352 U.S. at 328, 77 S.Ct. at 407. See cases cited in Annot., 59 A.L.R.2d 946, 995 (1958). Another group of courts, including our own, has adhered to what might be called "the intention of the sentencing court" theory. See Bradley v. United States, 447 F.2d 264, 272 n. 13 (8th Cir. 1971) (dictum), vacated on other grounds, 404 U.S. 567, 92 S.Ct. 746, 30 L.Ed.2d 722 (1972); Jones v. United States, 396 F.2d 66, 69 (8th Cir. 1968), cert. denied, 393 U.S. 1057, 89 S.Ct. 695, 21 L.Ed.2d 697 (1969); Sawyer v. United States, 312 F.2d 24, 26 (8th Cir. 1963). Cf. Green v. United States, 365 U.S. 301, 306, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961). The Third Circuit in Corson v. United States, 449 F.2d 544 (1971) (en banc), accurately described this second remedy as follows:

"Other circuits, most notably the Eighth, have adopted a more flexible approach—that the sentence retained should be that which most clearly approximates the intention of the district judge at the time of the original sentencing. This theory assumes that the sentencing judge clearly intended to impose on the defendant at least as severe a penalty as that indicated for any single count. They have therefore permitted to stand the heaviest penalty, irrespective of whether it was imposed upon the most aggravated of the counts. They have therefore vacated all sentences but the longest." *Id.* at 547.

In the *Corson* case, as here, the trial court had erroneously imposed separate sentences on three robbery counts. The Third Circuit held that the proper course was to remand to the district court with directions to vacate the multiple sentences originally imposed and to impose a general sentence on all three counts. *Id.* at 551.

The Second Circuit, in Gorman v. United States, 456 F.2d 1258 (1972), has concluded that "the sensible way out of the dilemma created by *Prince* . . . is that adopted by the Third Circuit en banc in *Corson* . . . ." *Id.* at 1259. In *Gorman*, however, the court did not remand because "Judge Zampano's intentions were crystal clear and remand would be needlessly time consuming and a meaningless act." *Id* at 1260. *Gorman*, however, is quite distinguishable from our case in that there a fifteen year sentence had been imposed on Count I while the trial court had suspended sentence on Count II and placed defendant on three minutes probation.

We have previously pointed out that the district court acted upon appellant's § 2255 petition by vacating the sentences imposed on Counts I and II on the ground that appellant was sentenced on those counts "on the basis of a finding of his guilt of criminal acts not charged in the indictment." The sentence on Count III for ten years remained in ef-

fect. We have demonstrated above that the district court was in error in concluding that Counts I and II were fatally defective, and we have shown that appellant's conviction under all three counts was valid. Although the district court's premise for vacating Counts I and II was patently wrong, the erroneous sentencing of appellant on all three counts must be corrected.

We, of course, have no way of knowing at this late date what prompted Judge Graven to impose twenty-year sentences on the lesser offenses encompassed in Counts I and II and a ten-year sentence on the more aggravated offense encompassed in Count III. In view of the state of the law at that time, it would seem logical to conclude that Judge Graven felt that appellant would be required to serve a total of twenty years. We have concluded upon a full consideration of all relevant circumstances that the problem before us can best be resolved by remanding to the district court with directions to impose one general sentence. This remand should not be regarded by the district court as a mandate to impose a general sentence of twenty years. That certainly is within the prerogative of the court, but we find no impediment in the law which would prevent the court from imposing less than a twenty-year sentence. For example, a ten-year sentence, in accord with the effect of the court's order entered in the § 2255 proceeding, may be judged appropriate.

Our remand should not be regarded as a departure from the intent theory heretofore applied by this court. We pursue this course because of the unusual history of this case. We are not persuaded to attempt to solve the dilemma by vacating the sentences on Counts I and II or on any other two counts. The district court should, in this case, be afforded the opportunity to correct the situation.

The judgment of conviction is affirmed, but the cause is remanded for resentencing in accordance with the teachings of this opinion.