STATE OF NEBRASKA, APPELLEE, V. REBECCA L. FRIEND, APPELLANT.

433 N.W.2d 512

Filed December 30, 1988.   No. 87-1049.

James D. Smith, of Brock, Seiler & Smith, for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Defendant was convicted by a jury of possession of cocaine and methamphetamine. She has appealed to this court, assigning generally as error the reception of certain evidence, prosecutorial misconduct, and the refusal to give a proffered instruction.

While driving her automobile on February 22, 1987, in Buffalo County, defendant was stopped and arrested for driving while intoxicated by Trooper Naber of the Nebraska State Patrol. There is no question as to the justification for the trooper's action. While being booked at the county jail, a marijuana pipe was discovered in her possession.

In the meantime, Trooper Karschner had arrived at the scene of the arrest to assist and arranged for a tow truck to tow away defendant's automobile. The passenger in defendant's car, Beth Mooney, was told to wait with Trooper Karschner in his automobile. When Mooney got out of the defendant's car, the trooper discovered a marijuana pipe, which Mooney admitted was hers.

When the tow truck arrived, Trooper Karschner inventoried the defendant's vehicle before allowing it to be towed away. He found 2 marijuana pipes with residue and a pack of cigarette papers on the dash shelf, a film canister containing leafy marijuana and the remainder of marijuana cigarettes in the passenger door pouch, a 12-pack of beer and 2 open bottles of beer, and a plastic sandwich container on the floor in front of the driver's seat. (Although Trooper Naber, the arresting officer, had seen an open beer container on the floor, he did not see the sandwich container.) The sandwich container had in it a brown vial with white powder, a "pharmaceutical fold" with white powder, a clear plastic bag with white powder, and a self-rolled cigarette. These substances were later identified as cocaine, methamphetamine, amphetamine, and marijuana. The defendant denied any knowledge of these items.

## ADMISSION OF EVIDENCE

The defendant argues that the court erred in admitting evidence that she had previously used cocaine and that she had previously sold marijuana, and in admitting testimony by one of the troopers that suspects in drug possession cases generally deny such possession.

On direct examination, defendant was asked by her counsel a series of question about whether she recognized some of the above-listed items found in her car. She denied that she had ever seen them before, other than the canister, or that she was aware that they were present in her car. She did admit that the canister was hers, however. During that questioning, defense counsel asked her if she had been smoking marijuana the day before her arrest (February 21), to which she answered in the affirmative.

Thereafter, on cross-examination, the following occurred:

[Prosecutor:] And you smoke marijuana?

[Defendant:] I don't know.

[Prosecutor:] You did?

[Defendant:] I did.

[Prosecutor:] Did you ever sell marijuana?

[Defendant:] Yes, I did.

[Prosecutor:] Did you ever do any other drugs?

[Defense counsel]: Your Honor, I'll object, irrelevant; also on the basis of 27-404.

> [The court]: Overruled.
>
> [Defendant]: Would you repeat the question?
>
> [Prosecutor:] Did you ever do any other drugs?
>
> [Defense counsel]: I want further objections as far as being remote.
>
> . . . .
>
> [Prosecutor:] Do you ever use controlled substances, drugs?
>
> [Defendant:] Do I? No.
>
> [Prosecutor:] Have you ever?
>
> [Defendant:] Yes.
>
> [Prosecutor:] Have you ever used cocaine?
>
> [Defense counsel]: Your Honor, if I could have a continuing objection on the basis of relevancy on the basis of remoteness. Also on the basis of section 27-404.
>
> [The court]: . . . Overruled . . . .
>
> [Prosecutor:] Have you used cocaine?
>
> [Defendant:] Yes, I have.

Although defendant now complains of the admission of testimony regarding her sale of marijuana and use of cocaine, she objected at trial only to the latter.

Evidence of other crimes, i.e., the prior use of cocaine, may be admissible for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Neb. Rev. Stat. § 27-404 (Reissue 1985). However, such evidence is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. § 27-404.

Generally, the admission or exclusion of evidence is a matter within the discretion of the trial court, which ruling is not to be disturbed on appeal absent an abuse of that discretion. *State v. Wells*, 229 Neb. 89, 425 N.W.2d 338 (1988).

However, in this case, the probative force of the evidence of defendant's prior use of cocaine was minimal. As in *State v. Oliva*, 228 Neb. 185, 190, 422 N.W.2d 53, 55 (1988), "The evidence of prior [acts] was, however, extremely probative on the one issue for which it may not be offered: character of the accused."

Of course, regardless of whether the admission of the

evidence was an abuse of discretion, the admission is not prejudicial if it can be said that the error was harmless beyond a reasonable doubt. *State v. Oliva, supra.* Harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant. *State v. Watkins,* 227 Neb. 677, 419 N.W.2d 660 (1988).

The critical issue in defendant's trial was her possession of cocaine and methamphetamine. In *State v. Harris,* 218 Neb. 75, 352 N.W.2d 581 (1984), this court recited the rule that when illegal materials are found in an automobile possessed and operated by the defendant, the evidence of unlawful possession is deemed sufficient to sustain a conviction, *"in the absence of any other reasonable explanation for its presence."* (Emphasis supplied.) *Id.* at 77, 352 N.W.2d at 582; *State v. Masur, ante* p. 620, 432 N.W.2d 815 (1988). A believable statement that the defendant did not place the contraband in the automobile or that its presence was not known to such defendant might seem to qualify under the exception factor of that rule.

The defendant's defense in this case was that she had no knowledge of the items found in her car and that various other people had had access to it that evening and could have placed the items in her car. Thus, the effectiveness of her defense hinged on whether the jury believed that she was not aware that the drugs were in her car. If the jury so believed, the possession could not be "knowing and intentional," as required by the prohibitory statute, and the defendant could not be convicted.

No claim was ever made that defendant did not know what cocaine looked like, so the evidence was not relevant, or at least not necessary, to prove her knowledge of the identity of that drug. However, the defendant's credibility in general, and on the specific issue of intentional possession, was crucial. The evidence of the defendant's prior use of cocaine served to destroy that credibility by suggesting that if she had previously used cocaine, it was likely that she had knowingly possessed the illegal drugs on the night in question.

Such reasoning was expressly disapproved in *State v. Coca,* 216 Neb. 76, 341 N.W.2d 606 (1983). In *Coca,* police stopped the defendant and searched his car, finding drug paraphernalia

and more than a pound of marijuana. The defendant was subsequently charged and convicted for knowingly possessing marijuana which weighed more than 1 pound. At trial, the State introduced evidence of the defendant's conviction 2 months earlier for harvesting marijuana. Based on the admission of that evidence, this court reversed the conviction.

The court first found that there was no doubt that the marijuana was found in the defendant's car. Thus, the court stated, the inquiry was whether the evidence of the harvesting conviction so bore upon the elements of intent and possession as to justify its admission. Further, explained the court, "The task further resolves itself into an analysis of whether the evidence was properly received as tending to establish any one or more of those remaining elements by proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. § 27-404(2)." 216 Neb. at 82, 341 N.W.2d at 610. The court applied each of these acceptable uses for the admission of prior acts to the facts and found that the defendant's previous harvesting activities had no bearing on his motive, opportunity, intent, preparation, plan, identity, or absence of mistake or accident. More importantly for our purposes, the court concluded that the prior harvesting had no value as to establishing the defendant's knowledge.

> Does the fact that he was involved in a prior harvesting scheme [in September] make it more likely he knew that the marijuana was behind the seat of the vehicle in November? It does not; the important question . . . is whether Coca knew the marijuana was in the car, not whether he knew what marijuana was.

*Id.* Based on this analysis, the court decided:

> We must therefore conclude that the evidence of the September crime has no relevancy to the question of whether Coca knowingly or intentionally possessed more than 1 pound of marijuana in November. The jury was asked to infer from the evidence that since Coca was involved with marijuana previously, he criminally possessed it at a later time. Evidence of a prior crime cannot be used for such a purpose.

*Id.* at 83, 341 N.W.2d at 611. (The court also commented in

dicta that the nonmarijuana-related physical evidence seized from the car was irrelevant and should not have been received. By the same token, it is arguable that the marijuana pipes and rolling papers in the present case were not relevant to the offenses of possession of cocaine and methamphetamine and should have been excluded.)

Under the reasoning of *Coca*, the defendant is correct in her contention that the evidence of her prior use of cocaine went only to show the jury that she was the type of person to knowingly possess cocaine and methamphetamine—a clearly improper purpose. For that reason, the conviction must be reversed and the cause remanded for a new trial.

However, we do deal with two of the defendant's other claims of error under the assumption that the same situations may again arise on that occasion.

## PROSECUTORIAL MISCONDUCT

On cross-examination, the prosecutor asked the defendant whether she had had a felony conviction within the last 3 years. The defendant agreed that she had. The prosecutor then asked, "What kind of conviction was that?" The defendant objected, and after the court heard further evidence outside of the presence of the jury, the court sustained the objection, and correctly so.

Although the question was never answered in the presence of the jury, the defendant argues that, when taken together with the prosecutor's earlier questions about the defendant's selling marijuana and using cocaine, the question about the nature of the felony conviction could lead the jury to surmise that the defendant had a prior drug-related conviction. In other words, although the judge sustained the objection, the prosecutor nevertheless was guilty of misconduct by "suggesting" the improper evidence.

In light of the evidence of the defendant's previous sale of marijuana and the fact that the court gave the usual instruction restricting the jury's consideration of the prior felony to defendant's credibility, it perhaps can be argued that the prosecutor's action was harmless error. However, instructions to prosecutors on the proper use of prior felony convictions apparently bear repeating.

There is no question but that a prosecutor's further inquiry as to the nature of the offense after a defendant has admitted his or her conviction of a felony is improper. Once the defendant answers in the affirmative a question as to a prior conviction, further inquiry is not permitted. *State v. Daugherty*, 215 Neb. 45, 337 N.W.2d 128 (1983).

The situation in this case is strikingly similar to that found in *State v. Johnson*, 226 Neb. 618, 413 N.W.2d 897 (1987). Despite the measures taken by the trial court in that case to rid the case of the State-injected prejudice, this court found it necessary to order a costly and time-consuming new trial, and added this "advice" to the State:

> [T]he credibility of the defendant as a witness was the correct issue in this case. The so-called "poison" having been injected into the case by the prosecutor, either deliberately or because of a lack of knowledge of the rules of evidence, it is problematical whether the defendant could have received a fair trial.
>
> *It must be impressed upon the State that this court will not continually search for ways to extricate the prosecution from the results of its own misconduct by labeling such action "harmless error."*

(Emphasis supplied.) *Id*. at 621-22, 413 N.W.2d at 899.

And, in an earlier case, *State v. Atwater*, 193 Neb. 563, 565-66, 228 N.W.2d 274, 275 (1975), we said:

> While the evidence of defendant's guilt herein is conclusive, this is a transgression which cannot be condoned. . . . Defendants must be given fair trials, and it is the responsibility of the prosecution to see that each defendant receives one. . . . Harmless error should never be applied in those instances where the prosecution deliberately, or because of very careless procedures, injects prejudicial error into the proceedings.

## JURY INSTRUCTION

Defendant asserts that the court erred in refusing to give her proposed instruction defining intentional possession or to give its own definition of "intentionally" and "possess." Additionally, the defendant assigns as error that the court gave an instruction which stated the material elements of the crime

charged as "1. The defendant knowingly or intentionally possessed controlled substance. 2. The possession of the controlled substance occurred in Buffalo County . . . ," without restating, in element (2), that the possession was knowing or intentional. For a reason which must be apparent to everyone, this latter assigned error is not discussed in the defendant's brief and, thus, will not be considered by this court on appeal. See, *State v. Greeno, ante* p. 568, 432 N.W.2d 547 (1988); *Nuttelman v. Julch,* 228 Neb. 750, 424 N.W.2d 333 (1988).

As previously stated, the court instructed the jury on the elements of the crime, including the statutorily defined words, "knowingly or intentionally" possessed a controlled substance. As a general rule, in giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute. Of course, if a word used in an instruction does not have a generally understood and accepted meaning, the failure of a trial court to define such word, especially upon request by a party, may constitute reversible error. The same may be said for a definition contained in the Nebraska Jury Instructions.

In this case, the defendant proposed by a tendered instruction that the court define "intentionally possessed." The form of that request was as follows:

> For the defendant to have intentionally possessed a controlled substance as required by Instruction Number _____, she must have "willfully" or "purposely", and not accidentally or involuntarily, had actual control, care and management of the controlled substance and not a passing control, fleeting and shadowy in nature.

Defendant argues on the strength of our opinion in *State v. Bridger,* 223 Neb. 250, 388 N.W.2d 831 (1986), that because in that case we condemned the failure of the trial court to define the word "steal," perhaps a word with a generally understood and accepted meaning, the same reasoning applies to the word "intentionally" under consideration here.

In *Bridger,* the following language appears: "It might be argued that the word 'steal' has such a generally understood and accepted meaning that no instruction was necessary. However, the same could be said for the words 'willfully,' 'purposely' . . . all of which definitions were included in the

court-given instruction." *Id.* at 255, 388 N.W.2d at 835. Furthermore, in *Bridger*, the trial court was criticized for failure to use the defendant's tendered instruction for the definition of "breaking and entering," which patterned NJI 14.10, rather than the court's own description of "breaking."

However, defendant overlooks the underlying rationale of *Bridger*. In the first place, defendant's requested instruction involved in *Bridger* tracked the exact language of NJI 14.10.

> The rules by which this court adopted the Nebraska Jury Instructions state: "(a) Whenever Nebraska Jury Instructions (NJI) contains an instruction applicable in a Civil or Criminal Case, and the Court, giving due consideration to the facts and the prevailing law, determines that the jury should be instructed on the subject, the Nebraska Jury Instruction *shall be used.*"

223 Neb. at 254, 388 N.W.2d at 834-35.

Secondly, the words "willfully" and "purposely" referred to in *Bridger* are also definitions contained in NJI 14.10, and the same rule applies in that instance. Strangely enough, both words as contained in NJI 14.10 are "defined as meaning intentionally." Similarly, the Random House Dictionary, Unabridged (2d ed. 1987) lists as a synonym for "intentional" the word "deliberate," and "purposeful," "willful," and "intentional" are set forth as synonyms for "deliberate"; "willful" is defined as "deliberate" and "intentional." To require of the trial court to engage in such a circuitry of definitional acrobatics would seem to be an exercise in futility.

However, for the reasons previously given, the judgment of the district court is reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.